Good morning, Your Honors. May it please the Court, Sarah Belleville on behalf of the appellant, William Castle. At this time, I would like to please reserve two minutes for a rebuttal. This is a case about discrimination. I should say first that the timing on this case is much too short and that I hadn't noticed that, so I would assume that we will probably let you go as much as ten minutes over. Okay? Thank you, Your Honor. This is a case about discrimination. Eurofresh and the State should not be permitted to circumvent their responsibilities under the Americans with Disabilities Act. This Court should reverse the District Court's order granting Eurofresh's motion to dismiss because the District Court erred by holding as a matter of law that Eurofresh was not Castle's employer under Title I of the ADA. Instead, in accordance with Baker, Castle has pled sufficient facts which, if taken as true, would state a claim that is plausible on its face that Eurofresh was Castle's employer, especially under the economic reality test. Didn't Kupar, though, distinguish Baker? And in addition to that, we have Hale that suggests that when you have a penological as opposed to a pecuniary arrangement that the ADA and other similar laws simply don't apply. How do you deal with that? Your Honor, first in response to your question about Hale, Hale is distinguishable here, particularly because for two reasons. The prisoners were arguing that the prison was their employer, which is distinguishable from this case where Castle is arguing that Eurofresh was the employer. Doesn't the prison pay the individual inmate? In other words, there's a contract between Eurofresh and the state for providing inmate labor, but the actual money flows directly from Eurofresh to this ACI, and they, in turn, cut the paychecks to the inmates, do they not? Yes, Your Honor, but Eurofresh is setting the rate of pay, and they are determining. It would help me, actually, as a predecessor to everything, to walk through the way this arrangement is set up. I was really quite baffled by it. They set the rate of pay in a sense, but isn't there an agreement with ACI as to what the rate of pay is going to be? Yes, Your Honor, but Eurofresh gets to determine work hours, such as how many hours the prisoners are working and when they are working, as well as bonuses. Okay, but let's back up a little. As Judge Smith was saying, it is my understanding that it is ACI that cuts the paycheck. ACI pays payroll taxes? Your Honor, it is unclear whether they are paying any taxes at all. The contract merely states that they will pay out any sums that are appropriate. However, there is no evidence that they are actually paying any of these. What is the authority under federal law for having an arrangement like this, or is federal law just not in this? There is a whole provision in federal law for prison exemplary programs, but I'm not sure it applies to this. I can't figure it out. Your Honor, are you asking whether federal law sets up this type of program? Well, I'm asking how federal law deals with employment, whether federal law regards this as an employment relationship for purposes of taxes, for example. Wouldn't that be pertinent? Yes, Your Honor. No, it's not pertinent whether federal law requires taxes in this sort of situation. ACI and Eurofresh were under the impression that prisoners are not employees, so it could be inferred that they would not think they had to pay these taxes on these inmates. Yes, and if they did pay taxes, that would be somewhat informative as to whether they really think they're not employees of somebody. Yes, Your Honor, but just because Eurofresh and the state do not consider them employees does not mean that they cannot be employees under, for example, the ADA. And while Arizona state law says that they are not considered employees of the prison, this court in Hale stated that the Supremacy Clause trumps that Arizona statute saying that they are not employees and that that state statute does not control whether they can be employees under federal law. But we went further in Hale. We basically said in Hale that they would not be covered by the provisions of the Fair Labor Standard Act by virtue of their status as prisoners, correct? Yes, Your Honor. So we said federal law, that federal statute, doesn't apply. So the question here, I guess, is given whatever the nature is of the arrangement between Eurofresh and ACI, is Eurofresh an employer? And as Judge Berzon says, it would be helpful to know who's withholding payroll taxes and remitting them. I assume they withhold them, but the record is silent on that. Yes, Your Honor. However, when looking at whether an employment relationship exists, we need to look at the totality of the circumstances. And regardless of whether or not the taxes are paid, the record is replete with evidence that this is an employer-employee relationship. But you're sort of arguing against yourself. You're assuming they're not paid, but there's something in the record that suggests that they are paid, but they're paid by ACI, and I don't know which is true. Exactly, Your Honor, which is why the district court should not have first dismissed this case on a 12-6, and second, just entered summary judgment in favor of the state because – So you're representing that the state does not pay the inmates through ACI? No, Your Honor. There's no evidence if these – if Social Security or Medicare taxes are even paid. Well, that's a separate question. But I thought I read in the record that it is actually ACI who pays the individual inmates. It's not Eurofresh. Your Honor, Eurofresh argues in its motions and its briefs that it does not pay those taxes and that the state does, but there is no other evidence besides – Taxes. We're talking the wages. The wages. Eurofresh pays to ACI, and then ACI disperses the wages to the inmates. That is correct. However, that is not dispositive of whether an employer-employee relationship exists. Well, the contract between Eurofresh and ACI covers far more than wages, does it not? It covers the cost of correctional officers, the cost of transportation, and I think there's a third thing, but I can't remember what it is. And that's all subsumed within the procurement contract as between ACI and Eurofresh. Yes, Your Honor. However, although ACI provides the transportation and it provides the correctional officers, the Eurofresh has complete control over the workplace situation that Castle is in. Well, is that true? I thought there was something in the record suggesting that there were parts of the Eurofresh greenhouse that the inmates were not permitted to work in for security reasons because we don't want to mix inmates with civilian, particularly female employees. Yes, Your Honor. However, Eurofresh and the state argue that prisoners were not permitted in the packhouse. However, Castle has provided evidence, for example, the declaration of inmate Jeffrey Tull and his own declaration that there were inmates working in the packhouse. It is also unclear whether the inmates were working alongside civilians even within the greenhouse. There were only 48 inmates when Castle was working there in two 12-acre greenhouses. So quite specifically, how would you explain why Hale isn't controlling here? I gather that Hale, unlike some of the cases, was quite similar in the nature of the relationship in that the people in Hale were not working on the prison grounds. Is that right? Yes, Your Honor. And they were working under a similar arrangement, but we don't know the details of it, but somewhat similar. They were working for prison-structured programs that were run by the prison. Here, the inmates in this case is distinguishable because they are working for an outside. Working for a private entity? No, Your Honor. They were working for even inmate employers. The program was by the prison. Can I ask a question with regard to the damages you are seeking? As I understand it, Mr. Castle has since been transferred to four different institutions, so he's no longer at this particular institution. Is that correct? Yes, Your Honor. Is he still in the custody of the Arizona Department of Corrections? Yes, Your Honor, until the end of this month. Until the end of this month? Yes, Your Honor. Is the only thing he is seeking at this point damages from either Eurofresh and or ACI for ADA violations? Yes, Your Honor. He's seeking back pay, Your Honor, because of his constructive discharge. Absent that disability discrimination, he would have continued to work at Eurofresh and made wages. Are you going to argue the Title II issue? Yes, Your Honor. The state has violated Title II here by denying Castle the access to this program on the basis of his disability, and they should not be permitted to contract out its inmates' labor without any regard for whether they are protected from disability discrimination. Let's talk about the state. We've got a real uphill battle with respect to Eurofresh, perhaps, but will you comment on what impact, if any, Armstrong v. Schwarzenegger may have on any claim Mr. Castle may have against the state? Your Honor, that case doesn't have very much effect here because although... Isn't it almost on all fours? Yes, Your Honor. However, here the state has, should not be, this court should not allow the state to contract around... That's exactly what Arno v. Schwarzenegger, there are several Arno v. Schwarzenegger, but the 2010 opinion says exactly that. Armstrong v.... Armstrong, I mean, yes, v. Schwarzenegger. My colleague to the right was on that panel, and it seems to me that perhaps that could be more fruitful for you because in that case there was a clear application of the ADA regulations with respect to county jails and the way that applied. If you're familiar with that case, could you address in what way the 2010 Armstrong v. Schwarzenegger case impacts our analysis in this case, at least vis-à-vis any application of the ADA to the state? Your Honor, I'm not, I think I misunderstood your question. I'm not familiar with the Armstrong v. Schwarzenegger. I thought you were referring to Armstrong v. Wilson. No, no, no, the Armstrong v. Schwarzenegger, 2010 case. Okay, I'm not familiar with that one. However, the Supreme Court in Yeski in 1998 held that Title II applies to state prisons. Okay, but Armstrong really is very close in, and it was really surprising to learn that nobody had discussed it, you or the other side or the district court. And it's a little debilitating to even have this discussion without it. The basic issue was whether the state could avoid having any ADA obligations with regard to prisoners that it had placed in county prisons. And the holding was that you, essentially what you're saying, you can't contract out your ADA applications, including to another public entity. So the question is how, as I understood it here, the district court actually held that Title II does apply, didn't it? Yes, Your Honor. But that you lose on the merits. Is that essentially what it held? Your Honor, it's that the state didn't have the authority to grant capital. Because of the way they wrote the contract. Yes, Your Honor. So then the question is are they allowed to write the contract. So essentially what your argument is about is may they write the contract that way. Yes, Your Honor. And furthermore, even the contract on page 619 of the record states that Eurofresh must abide by the ADA, and the state should have been enforcing its contract with Eurofresh, and it should have been doing something more than the nothing that it did. So is your contention that they should have required Eurofresh to accommodate him or that they should have accommodated him in some fashion that they didn't? Either one, Your Honor, that it should have enforced its contract with Eurofresh and required that they provide a reasonable accommodation or even investigate whether a reasonable accommodation existed or to provide him a different ACI job. Here they didn't provide, they denied him access to the ACI program and transferred him to the WIP program, which is not the same program. And he was paid one-sixth of the wages that he was making at Eurofresh. Taking your comment about the contract, I did not see that in there. So let's just take it as a given that the contract between the state and Eurofresh required them to comply with the ADA. Is Mr. Castle some kind of a beneficiary, a third-party beneficiary of that contract? Is that why you're saying that they're standing through that contract? No, Your Honor. I'm merely arguing that it's even in the, Eurofresh was under notice. I thought their contention with regard to that is that their obligation, that that means that with regard to their own employees, they have to comply. Yes, Your Honor. But it has nothing to do per se with Mr. Castle unless he is in fact an employee, as you contend. Yes, Your Honor. However, I'm merely arguing that both the state and Eurofresh were on notice that the ADA applied, and here the state should have been enforcing this contract and furthermore not contracting around its own obligations under Title II. But then we're still back to the issue of whether or not he was an employee of Eurofresh. No, Your Honor. The state argument does not, this court can hold that the state violated Title II without deciding whether or not he is an employee. It's simply persuasive that this is in the contract. How can you do that, though? The real issue here is whether he has standing, basically. And based upon Hale and, what's it, Kupar, it does not seem like he is because it's a penological arrangement, not a pecuniary arrangement. So if those cases control, then you really don't have standing as against Eurofresh, do you? Your Honor, those cases are not controlling here. I seem, I'm way over time, but I would like to answer your question. Please do. As I said at the outset, I'm considering you to have ten more minutes than we gave you. Okay. Thank you. So if you want to reserve time, you have to do it as against those extra ten minutes. Okay. Thank you. Your Honors, Hale and Kupar are not controlling this case. They are completely distinguishable from this case. Tell me how Hale is distinguishable. Just walk me through it. Why is it distinguishable? First, Your Honor, the prisoners were arguing that the prison was their employer, which that relationship between the prison and the prisoner is that of a penological relationship. Right. Here we have an outside employer. And Eurofresh was not required under the hard labor statute to provide work to the inmates. The prison was. But as you heard a minute ago, and, again, it's unfortunate you're not familiar with this Armstrong case, that would be helpful to you, but basically neither the state, the state can't contract out its obligations under the ADA. So the real issue here is whether Mr. Castle and those similarly situated are, in fact, employees under the ADA and the whistleblower statutes and the other number of things, Fair Labor Standards Act, as Judge Tallman talked about. In the case of the latter two, the Fair Labor Standards Act and the Whistleblower Act, they're not. They've been found not to be employees. So why is this case different? Again, I mean, nothing to do with the state, but with respect to Eurofresh. Right, Your Honor. Well, first, the Hale left open the question of whether inmates could be employees under other statutes. And the Hale court. Of course it did, because the other statutes weren't before them. But, I mean, the logic, take the Fair Labor Standards Act. I mean, that is a, you know, it's a quintessential labor-employee-friendly statute to make certain they're properly paid. ADA has to do with discrimination against people with disabilities.  Why is the logic of Hale any different than the logic that we should apply in this case as to Eurofresh? Your Honor, because the policy goals of the FLSA, as Your Honor noted, are very different from that of the ADA. It makes little sense. The definition of employee is the same. That's the hard problem. Yes, Your Honor. However, the definition of employee, as the Supreme Court has noted, is circular. Actually, it's not exactly the same. As I recall, the FLSA is broader, actually. It's something about somebody who an employer allows or suffers to work, something like that. Yes, Your Honor. So it's actually broader, not narrower. Yes, Your Honor. So because the definitions of employees are so broad, the court looks at economic reality tests to determine whether an employer-employee relationship exists. How can the economic reality be different depending on the statute? Well, Your Honor, because in Hale, the court held that it was the policy goals of the FLSA that were which was why they said that they were not employees. But here, the policy goals of the ADA are to provide a clear and comprehensive But none of this matters for your Title II argument, right? Because if you assume that this is an opinionological relationship, you still have a Title II obligation. Yes, Your Honor. Right. If you want to reserve time, you should do it. Yes. Thank you, Your Honors. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. My name is Melissa Marcus. I represent Appellee Eurofresh, Inc. Are you splitting time with the State? Yes. How are you splitting it? Again, you have 10 extra minutes, more than you thought. How are you splitting the time? Seven-three. So six minutes, if we have an additional 10 minutes, will be reserved for the State. Okay. There are two issues on appeal as to Eurofresh. The first issue, as the appellant discussed, is whether the District Court correctly held that the appellant who is working for Eurofresh, pursuant to State statute that requires inmates to work hard labor as part of their prison sentence, was not an employee of Eurofresh. Under this Court's decisions in both Hale, an en banc opinion, and also Cooper, the decision should be affirmed. The second issue on appeal as to Eurofresh, which was abandoned in the reply, but I'll address it briefly, is whether the District Court correctly dismissed the appellant's claim under the Rehabilitation Act, given that the ACI program was not a federally funded program. I don't understand them to be arguing that claim, but perhaps. And perhaps it's been abandoned. It was in the opening brief, so I don't need to address it today if it's been abandoned. Following up on my colleague's question, my understanding is that CASEL did claim that Eurofresh doesn't pay any Medicare or Social Security taxes. Now, when CASEL argued, she wasn't certain of that, if I recall correctly, and they were saying, therefore, indirectly, that they were getting a federal benefit, a federal payment. But whatever the accuracy of the allegation, can you clarify for the Court the way this works in practice? Here you've got Mr. CASEL. He's working for Eurofresh in connection with a contract between ACI and Eurofresh. When a certain pay period occurs, who gets the money? What, if anything, is taken from that salary, if you will? So Eurofresh pays a number of things pursuant to the ACI contract, and ACI, to answer an earlier question, is set up pursuant to Arizona statute. So under the ACI contract, Eurofresh is responsible for reimbursing the state for the cost of transportation and security guards and certain management fees related to the program. Eurofresh also tracks the time that the inmates spend working at Eurofresh. Eurofresh then takes the cost it pays out and determines a minimum wage surcharge such that Eurofresh pays hourly per inmate minimum wage for each inmate to the state. However, there is a deduction for amounts that Eurofresh has already paid for transportation and security guards. Okay, so the first three things you mentioned are things that are peculiar to his being in jail, basically, right? Yes. Eurofresh pays those things directly, not through ACI? Eurofresh pays all of this to ACI. You just said there's a deduction. I don't understand what that meant. Right, so Eurofresh pays to ACI the cost of transportation, the security guards and management fees. You said there's a deduction for those things. In other words, what is it deducted from, in other words? Well, there's a minimum wage surcharge is the way that the contract – So it's the net result that what they're paying is minimum wage per hour for each employee? Yes. Period, the end. But the net to him was $2.40 an hour? Is that how it worked out? Yes, but that money is not paid by Eurofresh to the inmate. I understand that, but were they actually paying the state, let's say for 40 hours that he worked, were they paying minimum wage for each hour that they reported to the state? Yes. At the end of the day, that is the amount they were paying. How it was calculated did factor in amounts already paid for transportation and security guards. Okay, but who cuts the paycheck then for the $2.40 times 40 hours at the end of the week? ACI. Now, where does this minimum wage obligation come from? It's simply in the contract? Is there any statutory obligation? No, it's simply from the contract. The ACI contract requires Eurofresh to pay the equivalent of a minimum wage to ACI for the hours worked by the inmates. There's no, it's strictly from the contract. There's a federal prohibition on interstate transportation of prison-made goods. Does that apply to this? Could you repeat the question? My understanding is that to protect the minimum wage and prevailing wage and so on, there is a federal prohibition on interstate shipping of prison-made goods by non-employees. And I'm just wondering whether the reason for paying the minimum wage is to deal with that exclusion or are these shipped in interstate commerce? I don't know. Well, the tomatoes would enter. I'm sorry? The tomatoes would be shipped into interstate commerce. So there must be some theory that there's compliance with federal law here. I can't speak to that particular statute on transporting. These are locally grown tomatoes, is that what you're saying? Yes. They're locally grown, but they're shipped in interstate commerce, like you just said. Yes. But the reality is whatever the genesis of the minimum wage requirement, whether it's by the federal regulation or statute to which my colleague makes reference or whether it's by contract, the reality is Mr. Castle, in this case, is being paid a minimum wage. Certain things are being deducted from that pursuant to the contract. If you know— Just a minute. That's not exactly right, if I understand you correctly. Okay. Tell me what's wrong. So Castle, or the appellant in this case, is not paid minimum wage. And under Hale, as the court's already addressed, the Fair Labor Standards Act does not apply to inmates. I understand that. The minimum wage only factors into what Eurofresh pays to ACI. And then ACI has the discretion to pay the appellant the amount it deems appropriate. Under state statute, there's a requirement for a minimum of $2 per hour for any contract. Okay. Where did the concept of the minimum wage come from then? I thought you said that pursuant to the contract between ACI and Eurofresh, that Mr. Castle and people similarly situated are paid a minimum wage. Did I misunderstand you? Yes. Okay. Where did the minimum wage concept come from? The minimum wage concept only factors into the value paid by Eurofresh to ACI. In other words, ACI could theoretically be making a profit on this. Yes. ACI is making a profit for the labor that it provides to Eurofresh. And if you know that when ACI pays money to Mr. Castle or to an account for his benefit, are any taxes, FICA fees, anything like that, is that deducted from that amount or is it just a straight $2.40 goes into an account, if you know? I can't answer that. I believe it's the $2.40 goes into an account, but that's not part of the record. I'm not sure if the state can speak to that or not. All right. So your contention is that now HALE was different in that it was the prison that was asserted to be the employer. There was no private employer on the scene there. Is that right? Well, HALE is actually on all fours with this case. It's an ACI program. Work was being performed off-site. But not for a private employer. No, correct. But it's the same. The reason that HALE controls is because the whole reason behind the decision was if work is performed pursuant to a state mandate of hard labor, there is no employment relationship. Is there any case in which the employer, a putative employer, any one of these cases about prisoners and federal statutes, in which the putative employer was off-site and a private employer? The one I know of is Watson, which I hold that it was covered by the FLSA. But are there any of these cases in which you had an off-site private employer who was deemed not to be an employer for purposes of federal statute? Not that I'm aware of. I believe all the work is. So this case is unique in that way. Because of the location of the work, but the work is still. And because of the character of the employer. Pardon? And because of the character of the employer. Well, the ACI program is the same. The work is being performed pursuant to a prison labor requirement. It's part of a sentence. It's not voluntary work like you see in Watson where it's work-release, which is very different. This is part of a sentence. It's different from, and maybe this comes under that other program you mentioned, if the prison was simply sending out a work gang to perform road work for the county, there would be no third-party entity that was paying the prison, correct? Correct. So what's unique about this program is it involves a third party, in this case Eurofresh, who contracts with the state for inmate labor and agrees as part of that contract to pay a sum of money, which apparently is a function of hours worked times minimum wage, and that determines the contract rate that the third party will pay ACI for each hour of inmate labor that it gets, right? Yes. But, again, the defining factor of this case is that the labor is required by state statute. This is not voluntary. We understand all that. But from the point of view of the relationship between Eurofresh and the prisoner-slash-employee, or not employee, if Eurofresh, essentially Eurofresh is obtaining labor services, on your theory, without the national obligation to accommodate people with disabilities. And so in that respect, from its point of view, because its interests are not penological, the interests of the prisoner are penological, but the interest of Eurofresher is to get the work done. And yet what you're claiming is the right to get the work done without the obligation applicable to everybody else who uses labor to accommodate disabilities. Right. They're getting less expensive labor because they are participating in a government program. Well, they're not even necessarily getting less expensive labor. I guess they're not paying payroll taxes, but they're paying the minimum wage. So as to the relationship directly to the employee, they're not even getting cheaper wages. Presumably that was because otherwise other employers would be very upset. So why would other employers be also very upset if they don't have everybody else's obligation to accommodate disabilities? The policy, you know, it's found in the Constitution. There's this involuntary servitude that is placed on. But forgive me, counsel, I don't think you're answering Judge Berzon's point. And it is an important point since really we have a policy consideration here. There's no case directly on point. If you're Employer A and you have all the obligations that come with federal law, including a requirement to comply with ADA and the RA, and Eurofresh by virtue of your contention has no such obligation, but it is a private employer engaged in selling its goods in interstate commerce, doesn't that give it a decided advantage over other employers? To participate in the government program. But that's not what HALE was about actually. Because in HALE they were trying to treat the prison as the employer, right? Right. So the situation as between private users of labor was not an issue in HALE, but it is an issue here. That's correct. But at the end of the day, this program is a government program and it's to enforce a requirement that or to implement a requirement that inmates engage in hard labor. And there is not a single case in any jurisdiction where there is an inmate working pursuant to a hard labor requirement. There's also no case like this one, as you just explained to me. HALE is an ACI case. It was the ACI program. It doesn't deal with a private employer. But the labor was still provided pursuant to statute. It's at the prison's disposal to use that labor as in HALE. It's on all fours here. Okay, I think we should hear from Ms. Jade. Thank you very much. Thank you. Good morning, Your Honors. Katherine Watanabe on behalf of the state defendants. Ms. Watanabe, since we have a relatively limited period of time, I assume you are familiar with the 2010 Armstrong v. Schwarzenegger case, right? Actually, Your Honor, I am not. I inherited this case. So I can't speak as to why it was not included. Are you familiar with it now? Have you had a chance to look at it at all? Unfortunately, I have not been able to connect to the Internet in here. Otherwise, I would have pulled it up and taken a look at it. It is unfortunate for the state, right on point. You may, I don't know whether our presiding judge would agree, but it might be helpful to get 28-J letters from both sides on the impact of Armstrong v. Schwarzenegger, the 2010 case from our court. Because if I'm reading it correctly, the state, whatever the liability of Eurofresh, the state is liable under both the ADA and the RA. So I'd be very interested in knowing your position on that. I'm sure my colleagues would as well. In other words, the question, I mean, the holding, there is a regulation governing Title II that says you cannot, that if you do this either directly or by contracting out, you have to follow the ADA. And there is, there was an attack on that regulation in Armstrong v. Schwarzenegger, and it was upheld with the conclusion that you, in some sense or other, you cannot contract out your ADA obligations if you're running, if these are your prisoners and you're responsible, you're the one who's imprisoning them and running their lives, essentially. So that, and my understanding, as I said before, is that actually the district judge here did regard Title II as applying here. Is that right? Yes, Your Honor. My understanding is that the district court. I disagree with that, with the larger concept that Title II is applicable here. The question is were its requisites met or not. Well, Your Honor, I think the case law is clear, and, Yeske, that Title II does apply to prisons. I understand that. Does it apply to this program? I believe that Title II applies to the prisons in the sense that if they were making work available to inmates, this program is a work program, they needed to accommodate Mr. Castle by finding work for him, accommodating him. The state's position is they did comply with Title II by finding him work that he could do in line with his disability. That was the reassignment to the voter pool within the prison. Correct. So do I understand, then, that the state is conceding that the ADA does apply, but it has accommodated him as required by the ADA. Is that right? I believe that was our argument below, Your Honor, that yes. By the way, for whatever it's worth, Armstrong v. Schwarzenegger is at 622 Bedford, 1058, and it's Ninth Circuit, 2010. But then the question becomes is can you allow them to work for Eurofresh and not have Eurofresh comply while absolving Eurofresh from ADA obligations? Well, Your Honor, I unless following these steps And those applications wouldn't have to inherit Title I. They can simply be the result of Title II. Well, I don't believe Title II would apply to Eurofresh. But it would apply to the state in having Eurofresh run this work program. Well, Eurofresh runs the program in the sense that it determines an inmate's job duties, the hours. Oh, it basically determines whether this person could work or not work given his disability issues. What I would say is, however, Eurofresh does not control the broader program of the prison work programs, which would be the WIP program and the ACI program. Let me see if I can come at it a different way. As I understand your argument, you are suggesting that ACI has a number of jobs within its program scheme, one of which is to work in the greenhouse at Eurofresh. But that's the only job that the ACI thinks it could offer to CASEL at that location. And there are other jobs within other programs of ACI working in the motor pool that they could move into, which is what they did. And I think the question Judge Berzon is asking you is, does Eurofresh have an independent obligation as a result of its contract with the state to find a different job than the one it contracted for with ACI, besides working in the greenhouse picking tomatoes? Does that help? I think it does, Your Honor. I think that in order to contemplate that, then Eurofresh and ADC would likely need to renegotiate their contracts as that would involve. Well, yes, but if there is something wrong with, and I don't know whether there is or not, but the whole concept underlying Armstrong, and as I understand, is that you can't, if you have to renegotiate your contract, then you have to renegotiate your contract. In other words, you can't contract with someone to do something that violates the ADA. Now, there's still the issue that Judge Tolman is raising, which is, well, perhaps it doesn't violate the ADA because there's a larger chunk of jobs, but, of course, in this instance, to get that, what he ended up doing was losing a huge amount of money by having this other job. Well, Your Honor, I would disagree that he necessarily lost a large amount of money because I believe the record shows that Mr. Castle was transferred from the Apache unit not very long after. I understand it, but on an hourly basis, he lost a lot of money. I mean, he went from $2.40 an hour to $0.50 an hour for whatever period of time, did he not? Correct. Okay. But that's a different question from whether or not Eurofresh had an obligation under the ADA, in light of its contract with the state, to find a different job besides the one it originally contracted with the state to provide inmate labor for. My understanding, Your Honor, is that Eurofresh did. I believe there is some dispute over this, but Eurofresh did attempt to do that. I guess what concerns me is there may very well have been an attempt on the part of several people to comply with this, but the basic question seems to be whether Eurofresh, as a contracting party, has an ADA obligation. In other words, is it the agent of the state of Arizona in this case, in which case it clearly does have an obligation, or is it truly an independent party that has only those obligations that are required by contract? And, therefore, if it's simply buying units of labor and is not in the place of the state as its agent, you've got a whole different situation. You know, you have to get into the discussion of whether Eurofresh has to accommodate if the act doesn't apply, unless the contract says otherwise. Is that correct? Your Honor, I believe the state would not classify Eurofresh as its agent. Okay. Okay. You're out of even all my extra time. Thank you very much. Oh, and we would be happy to do the letter if you would like. Please. I'm rather confused about the time, but let's say we'll give you three minutes to rebuttal. Thank you, Your Honor. Just two points on rebuttal, Your Honor. First, Hale is distinguishable here not only because of the nature of the employer, but also because the policy goals of the FLSA are very different from that of the ADA. It makes little logical sense to apply a minimum wage standard in the prison context, because the prison is providing the food, clothing, and shelter to the inmates. But the problem that I have with your argument is that there's a state statute that says all inmates shall work at hard labor, and there are not enough jobs within the prison to accommodate all the prisoners who are obligated under that statute to work. So what the state has done is to provide inducements to private employers outside the prison so that they can place part of the prison workforce in jobs that it can't provide within the prison walls. And the question we're wrestling with, obviously, is does that make each individual third party to the contract an employer for ADA purposes? Or should we send this case back to the district court and say, you know, we need to know a whole lot more than you told us on summary judgment about the nature of this program and what types of jobs ACI had available before we can determine whether a reasonable accommodation was made by ACI? Although that doesn't answer the question that I think we still have to answer, and that is, is Urofresh an employer for ADA purposes under this unique contractual arrangement? One of the questions that I'm dealing with here in my own mind is whether this work is performing a penological function. If it is, then, of course, that tends to argue in favor of the Hale-Coupar analysis. On the other hand, if this is just purely economic, a way to take care of these folks, then it's different. What is it that Urofresh does that is penological? What are they doing that carries out a penological function, if you know? Your Honor, it's unclear whether this is not sort of a penological function that Urofresh is providing. It's a more rehabilitative and teaching job skills to these inmates. Well, rehabilitative and job skills training would be penological, wouldn't it? Yes, Your Honor, however, it's not. Because they're actually providing training, too, right? Yes, Your Honor, but penological in the sense that it isn't a punishment to have to learn job skills. Well, they don't have any choice. They're there. I mean, Mr. Castle didn't say, you know, gee, I'd really like to go work for Urofresh. He just was sent there, right? He applied to work for Urofresh. Right, but nonetheless, he had to work somewhere. He may have had a choice where he wanted to work, but it was part of the prison system arrangement. Yes, Your Honor, I see a matter of time. May I briefly answer your question? The Urofresh is not required by the statute to hire these inmates. It gets to choose who it wants to hire. It decides that it wants this consistently available source of cheap labor, and it is in control over the workplace situation and under the policy goals of the ADA. For example, as Vansky pointed out, discrimination maintains the same invidious character inside prison as outside it. But there's a difference. Instead of a free market exchange of services for labor, there is the peniological concern that Urofresh may not be able to provide jobs, for example, for convicted rapists who are put in the same room with a number of potential rape victims. That's not something the employer typically has to worry about in the world outside prisons. So how does that factor into the equation? I mean, I think that's a concern that Judge Smith is wrestling with, and I have the same concern. Well, Your Honor, these inmates are treated, once they have applied and been hired by Urofresh, they are treated just like any other employee at Urofresh. Well, I don't know too many private employers who hire correctional officers as security guards to watch over the workers to make sure they don't wander off when they're supposed to be picking tomatoes. Well, Your Honor, even in, for example, a retail store, there are security guards that check bags of the employees when they leave the store to make sure that they haven't stolen items. So there's basically one security guard for, I don't know, 70 or 80. Exactly, Your Honor. This is not a virtual off-site prison. They have the freedom to move about the greenhouse. What if he ran? What if he said, I'm out of here? Yeah. Would he be shot? Could he be shot lawfully? Perhaps, Your Honor. I'm not sure about that. That's a little different than a normal prison. Yes, Your Honor. There are some tough employers, but that's really tough. Yes, Your Honor, but that is where the inmate is in his prison context. When he's at Eurofresh, doing his thing. He's saying run from Eurofresh, but you really are out of time. So thank you, Your Honor, all of you, for your very interesting argument in this interesting case. Thanks. Yeah, absolutely. To our pro bono supervisors and pro bono student, it's always a pleasure to have the arguments, and the law school down there does a great job in bringing really fine, qualified people. Hopefully your experience has not been too brutal. It's a tough question. On behalf of the university, thank you for the opportunity. Thank you very much. The case of Castle v. Eurofresh is submitted. It would be useful to have 20 HA letters about Arno versus, I mean, Armstrong.
judges: Berzon, Tallman, Smith